UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CATIA ISSA,

             Plaintiff,                    Case No. 2:15-cv-12327
                                                Judge Robert H. Cleland
v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY,

             Defendant.
_____/

## RECOMMENDATION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 11) AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 13)

**I.**      **RECOMMENDATION**: For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 13),

and **AFFIRM** the Commissioner's decision.

**II.**      **REPORT**

      Plaintiff, Catia Issa, brings this action under 42 U.S.C. §§ 405(g), 1383(c)(3)

for review of a final decision of the Commissioner of Social Security

("Commissioner") denying her application for supplemental security income (SSI)

benefits.  This matter is before the United States Magistrate Judge for a Report and

Recommendation on Plaintiff's motion for summary judgment (DE 11), the

1

Commissioner's cross motion for summary judgment (DE 13) and the administrative record (DE 9).[1]

## A.    Background

Plaintiff filed her application for SSI benefits on August 9 or 15, 2012, alleging that she has been disabled since August 7, 2012, at age 52.  (R. at 65-71, 75-76, 81-83.)  Plaintiff alleges disability as a result of back problems and arthritis of the hip.  (R. at 84-91.)[2]  Plaintiff's application was denied on October 15, 2012.  (R. at 25-31, 32, 33-36.)  A concurrent application for Title II Social Security benefits was likewise denied, but it was not appealed.  (*See* R. at 16; *see also* R. at 75-76.)

Plaintiff sought a *de novo* hearing before an Administrative Law Judge ("ALJ").  (R. at 37, 92-99.)  ALJ Ethel Revels held a hearing on March 18, 2014, at which Plaintiff was represented by counsel (Mark Greenman), an interpreter was

---

[1] Pages 63-76 of the Administrative Record are filed out of order and are located between pages 91 and 92 of the Administrative Record.

[2] The record appears to be inconsistent with respect to Plaintiff's work history.  For example, in her August 23, 2012 Work History Report, Plaintiff explained:  "I have always been a housewife.  My back issue started about 2-3 years ago preventing me from working."  (R. at 106-114; *see also* R. at 72-80, 100-105, 230, 244-245.)  In addition, her instant motion represents that "[s]he has never been employed."  (DE 11 at 19.)  However, Plaintiff's counsel's August 13, 2013 letter to the SSA states:  "A review of Exhibit 5D-Earnings-indicates significant earnings from 2001 to 2009.  There is an additional $2,565.00 of earnings in 2011 but I believe this would not be considered SGA."  (R. at 125.)

present, and Vocational Expert (VE) John Stokes testified.  (R. at 226-251; *see also* R. at 40-42, 63.)  On July 25, 2014, ALJ Revels determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 13-24.)

Plaintiff requested review of the hearing decision.  (R. at 9-12, 222-225.) On May 6, 2015, the Appeals Council denied Plaintiff's request for review.  (R. at 5-8.)  Thus, ALJ Revels's decision became the Commissioner's final decision.

Plaintiff then timely commenced the instant action on June 29, 2015.  (DE 1.)

**B.      Plaintiff's Medical History**

Plaintiff alleges in the field office disability report that she has been disabled since August 7, 2012.  (*See* R. at 81.)  Plaintiff's medical records span the period from July 3, 2008 to July 16, 2013.  (R. at 3, 130-221 [Exhibits 1F-8F].)  Plaintiff was without health insurance during September 2010.  (R. at 137, 174, 189, 191, 193, 195, 196.)  She underwent surgery on June 17, 2011 in Lebanon.  (R. at 217.)

Of particular importance are those records which post-date her alleged onset of disability.[3]  On October 2, 2012, Plaintiff was seen by Michael Geoghegan,

_____

[3] Plaintiff at least twice attempted to adjust her onset date.  On or about August 13, 2013, Plaintiff's counsel supplemented the record and proposed an amended onset date to Plaintiff's 50th birthday – July 29, 2010.  (R. at 124-125.)  On or about February 26, 2014, counsel submitted a hearing memorandum, within which Plaintiff requests an onset date of July 2011, contemporaneous with her laminectomy in Lebanon.  (R. at 126-128.)  The onset date was also discussed at the March 18, 2014 hearing.  (R. at 245-246.)  Still, the August 9, 2012 application

D.O. for evaluation of chronic pain in the lumbar spine and bilateral hips.  Among

other things, he concluded:  "she would likely benefit from restrictions with

regards to ambulating, climbing stairs, or being in a seated or standing position for

long periods of time.  This would likely limit her ability to use her upper

extremities for lifting, pulling, pushing, or carrying anything greater than five

pounds on an occasional basis."  (R. at 205-209; *see also* R. at 211.)  A same-day

x-ray of the bilateral hips revealed degenerative arthritis of the right and left hip.

(R. at 209-210.)

It appears that Plaintiff was seen by Ali A. Fadel, M.D. on several dates,

including July 2, 2012, November 26, 2012, January 16, 2013, and April 17, 2013.

(R. at 131, 212-213.)[4]  On July 16, 2013, Dr. Fadel diagnosed chronic lower back

pain and depression and, apparently, prescribed Zoloft, Lyrica and Loratadine.  (R.

at 214.)  On the same date, Dr. Fadel also completed an RFC Medical

Questionnaire in which he:  (1) diagnosed chronic lower back pain (lumbar

radiculitis) and chronic anxiety; (2) explained that the lower back pain radiated

down the legs and referred to the MRI result; (3) opined that she could lift less than

---

date was used in the ALJ's decision.  (R. at 13-24.)  "The proper inquiry in an
application for SSI benefits is whether the plaintiff was disabled on or after her
application date."  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233
(6th Cir. 1993).

[4] The Commissioner suspects the July 2, 2012 and January 16, 2013 notes were
completed by someone other than Dr. Fadel.  (*See* DE 13 at 19, 131 & 213.)

5 pounds while working, stand for 15-20 minutes before needing to rest, walk for 20 minutes before needing to rest, and sit for 30-40 minutes before needing to change position; and (4) concluded that Plaintiff "is unable to perform any sort of employment due to her lower back pain and her disability is permanent."  (R. at 215-216.)

### C.   Hearing Testimony

#### 1.   Plaintiff's Testimony

At the March 18, 2014 hearing, Plaintiff testified that she underwent back surgery in Lebanon – presumably the aforementioned June 17, 2011 surgery - explaining that she did not have back surgery in the United States, because "[t]hey didn't accept to do it," as she did not have insurance and, at that time, was not yet a citizen.  (R. at 241; *see also* R. at 217.)

Plaintiff has been in the United States of America since March 27, 2000.  (R. at 230.)  She attended college in Lebanon for two years but did not achieve a degree.  (R. at 231.)  She can read English and Arabic, but she agreed that she does need some help in English.  (R. at 239.)

Plaintiff testified that she is married and lives in a home with her husband and two adult daughters.  (R. at 230, 237.)  She sometimes helps with the cooking, but her daughters and/or husband do the laundry and clean the house.  (R. at 237.)  She can drive but does not do so often, perhaps once per week for a short distance.

5

(R. at 237-238.)  She does not go shopping by herself.  (R. at 238.)  Plaintiff

testified that she does not get out of the house alone very often during the day.  (R.

at 237.)  During the day, she watches television, reads, goes onto the internet and

talks on the phone with her family and friends.  (R. at 238.)  Although she does not

need help getting dressed, she does need help getting in and out of the bathtub.  (R.

at 240.)

Plaintiff testified that her sleep is bad.  (R. at 239.)  She usually goes to sleep

around 9:30 p.m. or 11:00 p.m., but she wakes up many times.  (R. at 240.)

Normally, she gets up at 10:00 a.m. or 10:30 a.m.  (R. at 240.)  She does not sleep

during the day.  (R. at 240.)  However, she does lie down to rest for 10 or 15

minutes, 2 or 3 times per day.  (R. at 236.)  When she rests, she uses the loveseat

and elevates her legs.  (R. at 233.)

Plaintiff testified that she can lift five pounds and further testified that she

has difficulty bending. (R. at 235-236.)  She has difficulty standing, walking and

sitting.  (R. at 233-234.)  Plaintiff testified that her day-to-day pain is generally a 7

or 8 on a scale of 0 to 10, with medication.  (R. at 240-241.)  She has a problem

with the middle of her back at the beltline.  (R. at 231-232.)  Her problems go from

her back into her hips, legs, calves and ankles.  (R. at 232.)  She experiences

numbness and burning in her calves and shins.  (R. at 232.)  Plaintiff also

experiences pain in the middle of her upper back.  (R. at 233.)  She also

experiences pain and numbness in her arms and neck.  (R. at 235.)[5]

### 2.    Vocational Expert Testimony

VE Stokes testified that a person of Plaintiff's age, educational level, work

experience and residual functional capacity (RFC) could perform work at the light

exertional level.  This would qualify her to perform such jobs as machine feeder,

information clerk and small products assembler.  (R. at 246-248.)

Upon examination by Plaintiff's counsel, the VE testified that if the lifting

limitation was reduced (presumably from the light work restriction of "lifting no

more than 20 pounds at a time with frequent lifting or carrying of objects weighing

up to 10 pounds[,]" 20 C.F.R. §§ 404.1567, 416.927) to five pounds,[6] the jobs

identified would be eliminated.  (R. at 250.)

---

[5] In several aspects, this testimony is inconsistent with the function report she completed.  In that medium, she reported that she "can't carry anything that weighs more than 2 pounds[,]" (R. 115), can "take care of the house and cook," as well as "spend time in the garden . . . " (R. at 116, *see also* R. at 119), "sometimes" finds it hard to sleep (R. at 116), is able to prepare "complete meals . . . [d]aily[,] most of the time[,]" (R. at 117), is able to do "cleaning, laundry" (*id.*), and regularly shops for groceries, excepting "heavy things," which she leaves for her husband. (R. at 118-119.)  She also reported going to the mall on a regular basis.  (R. at 119.)

[6] Consistent with consultative examiner Dr. Geoghegan, D.O.'s opinion (R. at 205-209) and Dr. Fadel's July 16, 2013 RFC Medical Questionnaire. (R. at 215-216.)

### D.    The Administrative Decision[7]

ALJ Revels rendered her decision on July 25, 2014.  (R. at 13-24.)  At Step

1, she found that Plaintiff has not engaged in substantial gainful activity since

August 9, 2012, the application date.  (R. at 18.)

At Step 2, the ALJ found that Plaintiff has the following severe impairments:

osteoarthrosis, a back disorder and obesity.  (R. at 18-19.)

At Step 3, the ALJ found that Plaintiff does not have an impairment or

combination of impairments that meets or medically equals one of the listed

impairments.  (R. at 19.)

---

[7] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. §404.1520(a)(4); see also 20 C.F.R. § 416.920.  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At Step 4, the ALJ found that Plaintiff has the RFC to perform light work with the following limitations:  must have a sit/stand option; limited to simple, routine tasks; can occasionally climb ramps and stairs; can never climb ladders, ropes or scaffolds; and is limited to work not requiring operation in temperature extremes.  (R. at 19-22.)  Moreover, the ALJ found that Plaintiff has no past relevant work.  (R. at 22.)

At Step 5, having considered Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 22-23.)

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

court does "not try the case *de novo*, resolve conflicts in evidence or decide

questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a

decision of the Commissioner will not be upheld where the SSA fails to follow its

own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

**F.      Analysis**

Plaintiff argues that the ALJ's decision that Plaintiff had the RFC to perform light work was not supported by substantial evidence, because (a) the ALJ did not give proper weight to the opinion of Plaintiff's treating medical source and consultative examiner, and (b) the ALJ improperly assessed Plaintiff's credibility. (DE 11 at 8, 13-26.)

The Commissioner contends that substantial evidence supports the ALJ's assessment of Plaintiff's RFC, because:  (a) the ALJ properly weighed the opinion evidence, and (b) substantial evidence supports the ALJ's assessment of Plaintiff's credibility.  (DE 13 at 3, 15-24, 24-29.)

> **1.      The ALJ properly weighed the opinion evidence when determining that Plaintiff had the RFC to perform light work with certain physical exertional (sit/stand) and postural (climbing) limitations.**

By way of background, the regulations concerning physical exertion requirements classifies jobs as "sedentary, light, medium, heavy, and very heavy." 20 C.F.R. §§ 404.1567, 416.927.  One of the differences between these levels of physical exertion is that "[s]edentary work involves *lifting no more than 10 pounds at a time* and occasionally lifting or carrying articles like docket files, ledgers, and small tools[,]" while "[l]ight work involves *lifting no more than 20 pounds at a time* with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. §§ 404.1567(a),(b), 416.927(a),(b) (emphases added).

11

In this case, the ALJ found that Plaintiff had the RFC to perform light work, with certain limitations.  (R. at 19-22.)  Plaintiff argues that the ALJ's light work RFC finding is not supported by substantial evidence.  She contends that this error stems from the ALJ's failure to give proper weight to the opinions and assessments of treating physician Dr. Fadel and consultative examiner Dr. Geoghegan.  (DE 11 at 1, 8 & 13; *see also* DE 11 at 25.)

This is not to say that these opinions and assessments were ignored.  In fact, in her Step 4 RFC determination, the ALJ acknowledged not only Dr. Geoghegan's opinion that Plaintiff would be limited to "lifting, pulling, pushing, or carrying anything greater than five pounds on an occasional basis[,]" but also Dr. Fadel's opinion that Plaintiff could lift less than 5 pounds while working.  (R. at 21, 209 & 215.)  She assigned their opinions "some weight" and "limited weight," respectively.  (R. at 21.)  However, Plaintiff argues that "the lifting, carrying, sitting and standing limitations assessed by both Dr. Geoghegan and Dr. Fadel limited the plaintiff to no more than sedentary work activity."  (DE 11 at 16; *see also* DE 11 at 19, 23 & 26.)  She further contends that, although the ALJ mentioned 20 C.F.R. § 416.927(e) ("Opinions of nonexamining sources") in her Step 4 RFC determination (*see* R. at 20), the ALJ "fail[ed] to address the factors in

her decision[,]" (DE 11 at 18-19), presumably those set forth in Sections

404.1527(c), 416.927(c).[8]

### a. Evaluating opinion evidence under 20 C.F.R. §§ 404.1527, 416.927

The ALJ must consider all medical opinions that he or she receives in

evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).  The

regulations define medical opinions as "statements from physicians . . . that reflect

judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s),

and your physical or mental restrictions."  20 C.F.R. §§ 404.1527(a)(2),

416.927(a)(2).  "Administrative law judges are not bound by any findings made by

State agency medical or psychological consultants, or other program physicians or

psychologists."  20 CFR §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).  The ALJ must,

however, "consider findings and other opinions" of State Agency medical or

psychological consultants.

The ALJ generally gives deference to the opinions of a treating source

"since these are likely to be the medical professionals most able to provide a

detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring

a unique perspective to the medical evidence that cannot be obtained from the

---

[8] These include examining relationship, treatment relationship, supportability,
consistency, specialization and other factors.  20 C.F.R. §§ 404.1527(c)(1)-(6),
416.927(c)(1)-(6).

objective medical findings alone . . . ."  20 C.F.R. §§ 404.1527(c)(2),

416.927(c)(2); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408 (6th Cir. 2009).

To qualify as a treating source, the physician must have an "ongoing treatment

relationship" with the claimant.  20 C.F.R. § 404.1502.

　　　If the ALJ does not afford controlling weight to a treating physician's

opinion, the ALJ must meet certain procedural requirements.[9] *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  Specifically, if an ALJ does not

give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the
> treatment relationship and the frequency of examination, the nature
> and extent of the treatment relationship, supportability of the opinion,
> consistency of the opinion with the record as a whole, and the
> specialization of the treating source—in determining what weight to
> give the opinion.

*Id.; see also* 20 C.F.R. §§ 404.1527(c), 416.927(c).

---

[9] An exception exists for treating source opinions on issues that are reserved to the
Commissioner, which "are never entitled to controlling weight or special
significance."  S.S.R. 96-5p, 61 FR 34471-0, at *34473.  Examples of issues
reserved to the Commissioner include:

> 1. Whether an individual's impairment(s) meets or is equivalent in
> severity to the requirements of any impairment(s) in the listings;
> 2. What an individual's RFC is;
> 3. Whether an individual's RFC prevents him or her from doing past
> relevant work;
> 4. How the vocational factors of age, education, and work experience
> apply; and
> 5. Whether an individual is "disabled" under the Act.

　*Id*.

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion,"  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and  "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550 (6th Cir. 2010) (per curiam) (internal quotation omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "*Wilson* factors" listed in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). *Norris v. Comm'r of Soc. Sec.*, No. 11–CV–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r of Soc. Sec*., 394 F. App'x 216, 222 (6th Cir.2010)). In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Commissioner Social Sec. Admin*., 414 F.App'x 802, 804-805 (6th Cir. 2011) (citing § 404.1527(d)(2)).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [§ 1527(c) ]–the provision of the procedural safeguard of reasons–even though she has not complied with the terms

15

of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th

Cir.2006) (quoting *Wilson* , 378 F.3d at 547).  *See also, Betty v. Comm'r of Soc.*

*Sec.,* No. 15-CV-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016),

*report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554

(E.D. Mich. Mar. 21, 2016).

The United States Court of Appeals for the Sixth Circuit has stressed the

importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants
> understand the disposition of their cases," particularly in situations
> where a claimant knows that his physician has deemed him disabled
> and therefore "might be especially bewildered when told by an
> administrative bureaucracy that she is not, unless some reason for the
> agency's decision is supplied."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d
> Cir.1999). The requirement also ensures that the ALJ applies the
> treating physician rule and permits meaningful review of the ALJ's
> application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33
> (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45.  Thus, the reason-giving requirement is "particularly

important when the treating physician has diagnosed the claimant as disabled."

*Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. A'ppx 771, 777 (6th Cir. 2008)

(citing *Rogers*, 486 F.3d at 242).

For the reasons stated below, I find that the ALJ's opinion gives good

reasons for discounting the medical opinions at issue and that the Commissioner

has met the goal of 20 C.F.R. §§ 404.1527(c), 416.927(c).  *Francis*, 414 F.App'x at

805  (quoting *Wilson,* 378 F.3d at 547).  I also find that the opinion "'permits the

16

claimant and [this] reviewing court a clear understanding of the reasons for the weight given [the] treating physician's opinion[.]'" *Francis,* 414 F.App'x at 805 (quoting *Friend*, 375 F.App'x at 550).

### b.  Ali A. Fadel, M.D. (treating physician)

The ALJ assigned "limited weight" to the July 16, 2013 RFC Medical Questionnaire completed by Dr. Fadel.  (R. at 21-22, 215-216.)  Among other things, Dr. Fadel opined that Plaintiff could lift less than 5 pounds, stand 15-20 minutes before needing to rest, walk 20 minutes before needing to rest, and sit for 30-40 minutes before needing to change position, ultimately concluding that Plaintiff was "unable to perform any sort of employment due to her lower back pain and her disability is permanent."  (R. at 215-216.)[10]

Here, the Court should conclude that the ALJ properly discounted, or declined to give controlling weight to, this assessment by Dr. Fadel.  First, the ALJ concluded that the postural limitations "are inconsistent with claimant's own testimony."  (R. at 21.)[11]  As noted above, Plaintiff testified that she could stand for

---

[10] Notwithstanding Dr. Fadel's opinion that Plaintiff was "unable to perform any sort of employment due to her lower back pain . . ." (R. at 216), the Court notes that "the ultimate determination of disability is a matter reserved to the Commissioner."  *Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 475 (6th Cir. 2008); *see also* SSR 96-5p, 1996 WL 374183 (S.S.A. July 2, 1996).

[11] As listed in the Disability Determination Explanation form, postural limitations include climbing, balancing, stooping, kneeling, crouching and crawling, while

about 30 minutes, sit for 45 minutes and lift about 5 pounds.  (R. at 233-235.)[12]  As

the Commissioner correctly notes, "[w]hen a doctor says one thing, and the

claimant another, an ALJ is allowed to discount that doctor's opinion."  (DE 13 at

20.)  *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697 (6th Cir. 2007)

("We find that the ALJ did not err in refusing to give probative weight to a treating

physician's opinion that is contradicted by statements from the claimant himself.").

Moreover, citing Plaintiff's testimony and the self-completed SSA Function Report

(R. at 115-122), the ALJ noted that Plaintiff's "continued preparation of complete

meals, care of her husband and children, and performance of house chores

indicates that she is capable of performing at the light exertional level with the

aforementioned restrictions[.]"  (R. at 21-22.)  It was entirely proper for the ALJ to

discount a medical opinion which conflicted with the claimant's actual, self-

reported, daily activities.  *Francis*, 414 F.App'x at 805.  It is also worth noting that

Dr. Fadel's July 16, 2013 assessment that Plaintiff could work standing for 15-20

minutes before needing to rest and could work sitting for 30-40 minutes before

needing to change position is consistent with the ALJ's RFC limitation of a

sit/stand option.  (R. at 216.)  Thus, the ALJ made some "findings consistent with

---

exertional limitations include lifting, carrying, standing, walking, sitting, pushing
and pulling.  (R. at 29-30.)

[12] The Court also notes that her August 23, 2012 function report states, "I can't
carry anything that weighs more than 2 pounds."  (R. at 115.)

[the treating physician's] opinion[.]"  *Nelson*, 195 F.App'x at 470.  In other words, the ALJ gave this opinion "limited weight," as opposed to "no weight."[13]

### c.  Michael Geoghegan, D.O. (consultative examiner)

As previously noted, the ALJ assigned "some weight" to the October 2, 2012 evaluation by Michael Geoghegan, D.O. (R. at 21, 205-209; *see also* R. at 210-211.)  (DE 11 at 14.)  Plaintiff questions what the ALJ meant by "some weight," given that the ALJ's hypothetical to the VE did not incorporate Dr. Geoghegan's limitations in range of motion in the lumbar spine or motor strength in the lower extremities, and also because the ALJ's RFC finding did not include a 5 pounds limitation on lifting, pulling, pushing or carrying.  (DE 11 at 14; *see also* DE 11 at 13-16.)

---

[13] Although Plaintiff's treating medical source argument cites to some Sixth Circuit decisions (DE 11 at 18), these do not change my conclusion.  In *Sherrill v. Sec'y of Health & Human Servs., 757 F.2d 803 (6th Cir. 1985),* the non-treating internist rendered ambivalent testimony and was not a psychiatrist.  *Sherrill, 757 F.2d at 805* (testimony of record-reviewing physician was entitled to less weight than the reports of any physician who had examined plaintiff over a period of time) *(citing Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).*  In *Shelman v. Heckler,* 821 F.2d 316 (6th Cir. 1987), "the ALJ made no finding that the opinions of plaintiff's treating physicians were not supported by sufficient medical data."  *Shelman v. Heckler, 821 F.2d at 321* ("the opinion of a nonexamining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.") (internal citations omitted).  Here, while the ALJ gave "significant weight" to the opinion of the non-examining state agency medical consultant, the ALJ did so by properly discounting treating physician Dr. Fadel's assessment, because it conflicted with Plaintiff's testimony and representations.

"[T]he opinion of a consultative examiner . . . is usually entitled to less weight than that of a treating physician." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004) (referencing 20 C.F.R. § 404.1527(d)). Stated otherwise, "the opinion of a consultative physician hired by the government to defend a disability claim ordinarily is entitled to less weight than that of a treating physician." *Craft v. Sec'y of Health & Human Servs.*, 812 F.2d 1406 (6th Cir. 1987). Still, as with the ALJ's treatment of treating physician Dr. Fadel's assessment, the Court should conclude that the ALJ properly discounted, or declined to give controlling weight to, Dr. Geoghegan's October 2, 2012 opinion.

As an initial matter, the ALJ's decision expressly mentioned both range of motion and motor strength. For example, the ALJ noted the September 5, 2010 assessment of non-tender extremities with full range of motion (R. at 139), Dr. Ramirez-Jacob's October 10, 2012 note that the CE exam showed moderate restriction of range of motion of lumbar spine (R. at 29), and Dr. Geoghegan's October 2, 2012 notes reflecting decreased range of motion in the lumbar spine (R. at 206-207; *see also* R. at 209). (R. at 20-21.) In addition, apparently referring to Dr. Geoghegan's October 2, 2012 consultative examination, the ALJ noted that Plaintiff had "full motor strength in the bilateral upper extremities." (R. at 21,

20

208.)[14]  Furthermore, the ALJ's decision also took into consideration Drs.

Geoghegan and Fidel's opinions on pushing, pulling, carrying and/or lifting.  (R. at

21.)  Therefore, range of motion, motor strength and limitations on pushing,

pulling, carrying and/or lifting were not without consideration by the ALJ, and this

consideration included Dr. Geoghegan's findings.

More specifically, the ALJ considered the supportability of Dr. Geoghegan's

opinion.  *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical

source presents relevant evidence to support an opinion, particularly medical signs

and laboratory findings, the more weight we will give that opinion. The better an

explanation a source provides for an opinion, the more weight we will give that

opinion.")  Specifically, the ALJ concluded that "[w]hile the claimant's history of

pain and surgery, as well as the degenerative arthritis in the bilateral hips, supports

restriction on postural and exertional activities, Dr. Geoghegan's opinions are

vague and fail to adequately define the extent of these limitations on the claimant's

ability to perform basic work activity."  (R. at 21.)  Plaintiff contends that this was

not vague, noting that Dr. Geoghegan specifically stated:

> Based on the physical examination and due to her loss of range of
> motion, loss of motor strength in her lower extremities, and positive

---

[14] Other references in the record to "motor strength" include the September 5, 2010
records from Oakwood Medical Center's Emergency Department (within the
physical assessment for low back pain, note "motor strength: moves all
extremities[.]") and Dr. Geoghegan's consultative examination (reduced or loss of
motor strength (4/5) in the bilateral lower extremities).  (*See* R. at 143, 208-209.)

straight leg testing bilaterally, she would *likely benefit* from restrictions with regards to ambulating, climbing stairs, or being in a seated or standing position for long periods of time. This would *likely limit* her ability to use her upper extremities for lifting, pulling, pushing, or carrying anything greater than five pounds on an occasional basis.

(R. at 209 (emphasis added), DE 11 at 15.)  Here, the Court should agree with the Commissioner that "[t]he ALJ correctly gave reduced weight to Dr. Geoghegan's opinion because it was vague and in conflict with Plaintiff's daily activities, and with Dr. Geoghegan's own treatment notes."  (DE 13 at 9.)  Although not expressly referenced by the ALJ, Dr. Geoghegan qualified his opinions with the phrases "would likely benefit from" or "would likely limit her ability to." Equivocating opinions of this ilk are reasonably discounted.  *See Tracey v. Comm'r of Soc. Sec.*, No. CV 2:14-CV-1379, 2015 WL 4748009, at *11 (S.D. Ohio Aug. 12, 2015), report and recommendation adopted, No. 2:14-CV-1379, 2015 WL 5450915 (S.D. Ohio Sept. 17, 2015) ("given Dr. Rowland's vague opinion that Plaintiff's abilities to maintain attention and concentration as well as respond appropriately to work pressures were "likely to be problematic," the ALJ reasonably discounted it.").

Furthermore, the ALJ considered the consistency of Dr. Geoghegan's opinion with the record as a whole.  See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a

whole, the more weight we will give to that opinion."). Specifically, the ALJ referenced Plaintiff's self-completed function report and her testimony as to full meal preparation, house and yard work and shopping as evidence of "the ability to lift more than 5 pounds on an occasional basis[.]" (R. at 21, 116-118, 237-238.) *See Francis v. Comm'r Soc. Sec. Admin.*, 414 F. App'x 802, 806 (6th Cir. 2011) ("The ALJ thus cited specific conflicts between Dr. Wakham's opinion and substantial medical, lifestyle, and opinion evidence."). It further appears that the ALJ took into consideration the apparent inconsistency between Dr. Geoghegan's own assessment of full "[m]otor strength . . . in the bilateral upper extremities[,]" while at the same time assessing a "limit[ation] [in] her ability to use her upper extremities for lifting, pulling, pushing, or carrying anything greater than five pounds on an occasional basis." (R. at 21, 208-209; *see also* DE 13 at 18-19.) *See Leeman v. Comm'r of Soc. Sec.*, 449 F. App'x 496, 497 (6th Cir. 2011) ("ALJs may discount treating-physician opinions that are inconsistent with substantial evidence in the record, like the physician's own treatment notes.").

The ALJ properly discounted consultative examiner Dr. Geoghegan's assessment as unsupported and inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(3),(4); 416.927(c)(3), (4). As the Commissioner points out, these justifications were given even though "[a]n ALJ need not 'give good reasons' for the weight he assigns opinions from physicians who . . . have examined but not

treated a claimant." *Perry ex rel. G.D. v. Comm'r of Soc. Sec.*, 501 F. App'x 425, 426 (6th Cir. 2012) (referencing, in part, 20 C.F.R. § 416.927(c)(2)). Nevertheless, she did so.

Finally, Plaintiff wonders "what weight was given to [the] opinion." (DE 11 at 14.) However, the ALJ's RFC provided for certain postural (climbing) and exertional restrictions (sit/stand option), which are consistent with Dr. Geoghegan's assessment that: "she would *likely benefit* from restrictions with regards to ambulating, climbing stairs, or being in a seated or standing position for long periods of time." (R. at 19, 21-22, 209 (emphasis added).) Accordingly, the Court should conclude that the ALJ properly discounted, or declined to give controlling weight to, Dr. Geoghegan's October 2, 2012 assessment, while nonetheless making "findings consistent with [his] opinion[.]" *Nelson*, 195 F.App'x at 470.

### d.   Sonia Ramirez-Jacobs, M.D. (non-examining state agency medical consultant)

The ALJ assigned "significant weight" to the October 10, 2012 opinion of Sonia Ramirez-Jacobs, M.D. (R. at 21, 25-31.) Dr. Ramirez-Jacobs noted that Plaintiff demonstrated the maximum sustained work capability for light work. (R. at 31.) She also noted that Plaintiff could never climb ladders, ropes or scaffolds but could occasionally perform other postural activities. (R. at 30.) In addition, as to exertional limitations, Dr. Ramirez-Jacobs noted Plaintiff's ability to do

24

personal chores, and further observed that the "CE exam showed mod[erate] restriction" of range of motion in the lumbar spine, and that the patient "ambulates with no cane." (R. at 29.) In assigning this opinion "significant weight," the ALJ relied upon "the evidence cited by Dr. Ramirez-Jacobs concerning the claimant's *relatively significant activities of daily living* as well as the near complete lack of significant treatment following the claimant's July 2011 surgery . . . ." (R. at 21 (emphasis added).)

The Court recognizes, as Plaintiff argues, that both the treating and consultative physicians (Drs. Fadel and Geoghegan) assessed limitations of lifting 5 pounds or less, while the non-examining physician Dr. Ramirez-Jacobs opined that Plaintiff could lift and/or carry 20 pounds occasionally, 10 pounds frequently, and was capable of light work. (*See* R. at 29, 31, 209, 215, DE 11 at 17-18.) The Court further notes that Dr. Ramirez-Jacobs's lifting and/or carrying limitations (including upward pulling) are consistent with the lifting and carrying limitations of "light work." 20 C.F.R. §§ 404.1567(b), 416.927(b) ("Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."). Plaintiff takes issue with this, and argues that "there is no evidence contrary to Dr. Geoghegan or Dr. Fadel other tha[n] the non-examining physician." (DE 11 at 18.) Nonetheless, the regulations provide for such a circumstance. "When we do not give the treating source's opinion

controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion.  We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ did so here.

As outlined above, the ALJ considered several of these factors when determining the weight assigned to Drs. Geoghegan's and Fadel's opinions and then provided "good reasons" for assigning them "some weight" or "limited weight."  Also, "an ALJ can properly rely on the conclusions of a non-examining, record reviewing physician to support an RFC assessment."  *Gazella v. Comm'r of Soc. Sec.*, No. 13-11099, 2014 WL 555192, at *11 n.2 (E.D. Mich. Feb. 12, 2014) (Zatkoff, J., adopting report and recommendation of Hluchaniuk, M.J.).  Where, as here, the non-examining source's opinion is consistent with the overall record and the treating source's opinion is not, the ALJ is permitted to give greater weight to the former than to the latter.  SSR 96-6P (S.S.A. July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."); *see also Thomas v. Comm'r of Soc. Sec.*, No. 12-11545, 2013 WL 4550198, at *13 (E.D. Mich. Aug. 28, 2013)

26

("the examining and reviewing state agency physicians described essentially consistent findings regarding plaintiff's functional limitations, and the ALJ reasonably gave some weight to the opinions of those physicians.").  Accordingly, the Court should conclude that the ALJ properly credited the non-examining state agency medical consultant's determination.

### e.    Conclusion

As discussed above, here, the ALJ properly discounted, or declined to give controlling weight to, the opinions of the consultative examiner and treating physician and gave significant weight to the opinion of the state agency medical consultant.  Therefore, the Court should conclude that the ALJ properly evaluated the opinion evidence in this case in accordance with 20 C.F.R. §§ 404.1527(c), 416.927(c).

### 2.    Substantial evidence supports the ALJ's assessment of Plaintiff's credibility.

Plaintiff argues that the ALJ did not properly assess Plaintiff's credibility, noting that the ALJ "made no inquiry of the plaintiff's pain, abilities or limitations" at the hearing.  (DE 11 at 21.)  However, the Court agrees with the Commissioner that where, as here, Plaintiff had counsel at the administrative hearing, her frustration "is better directed at her hearing representative[,]" since there is no "bright-line rule requiring ALJs to conduct hearings of certain lengths." (DE 13 at 28), *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 363 (6th Cir.

2014) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983)); *see also Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) ("when the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."), *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994) ("the ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record.").The standard of review requires that an ALJ's assessment of credibility be given "great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue,* 263 F. App'x 469, 475 (6th Cir. 2008).  Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Comm'r Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997).

Credibility challenges are further guided by the Social Security Administration's regulations concerning the evaluation of symptoms, including pain.  20 C.F.R. §§ 404.1529, 416.929; *see also* SSR 96-7p ("Assessing The Credibility Of An Individual's Statements").  Among other things, these regulations provide that "[f]actors relevant to your symptoms, such as pain, which we will consider include:

(i)     Your daily activities;

28

    (ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

    (iii)   Precipitating and aggravating factors;

    (iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff seems to take issue with the ALJ's application of these factors to her case. Citing SSR 96-7p, She disagrees with the ALJ's finding that "[t]he record as a whole does not reflect the type of medical treatment one would expect for an individual experiencing disabling symptoms[,]" (R. at 21), rhetorically querying "what type of treatment one would expect after undergoing surgery[?]" (DE 11 at 23.) Plaintiff further avers that pain can cause limitations in such activities as lifting, standing, walking or sitting without being outright disabling. (DE 11 at 23.)

Nonetheless, it is clear that ALJ Revels did consider several of the 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) factors when concluding that Plaintiff's

statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (R. at 20.) This is evident from the ALJ's references to (a) Plaintiff's own representation, recorded in her disability report, that her ability to work was limited by back problems and arthritis of the hip (R. at 85), (b) her testimony about pain, numbness, tingling, sitting, standing, lifting, opening and closing her hands, household chores, getting in and out of the bathtub (R. at 232-235, 237 & 240), and (c) the representation in her August 23, 2012 function report that she cannot reach something that is too high or too low (R. at 120). (R. at 20.) However, the ALJ balanced these references against several contrasting citations from the medical record, observing that:

- Dr. Fadel treated Plaintiff in January and July of 2013"conservatively with medication[.]" (R. at 20, 213-214.)

- Since Plaintiff's June 17, 2011 surgery, "the record reveals highly infrequent and minimal treatment . . . ." (R. at 21, 217.)

- Dr. Ramirez-Jacobs's October 10, 2012 Disability Determination Explanation demonstrated "relatively significant activities of daily living . . . ." (R. at 21, 28.)

- Dr. Geoghegan's October 2, 2012 "suggestion for treatment was only conservative therapy and medication treatment[.]" (R. at 21, 209.)

Also, as noted above, Plaintiff's testimony is inconsistent in several aspects with the function report she completed.[15]  This is further record support which is consistent with the ALJ's credibility conclusion.

Further, the ALJ noted that "[t]he record contains very little evidence of treatment after the initial application date and even after the claimant's July 2011 surgery.  The little treatment that is in the record is minimal and conservative, indicating significant improvement since the surgery[.]"  (R. at 21.)  *See also Strong v. Soc. Sec. Admin.*, 88 F.App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain.") Nevertheless, while not expressly cited in the ALJ's written decision, Plaintiff's undated medication list (including Zoloft, Lyrica, Crestor, Naprosyn, Prilosec PRN and Loratadine, each apparently prescribed or monitored by Dr. Fadel) was acknowledged by the ALJ during the hearing and apparently not ignored in reaching her conclusions.  (R. at 123 [Ex. 7E], 243 & 245.)

Citing the ALJ's observation of Plaintiff's "relatively significant activities of daily living[,]" Plaintiff submits that her "ability to perform some activities of daily living[] fail[s] to support a finding that she retained the ability to perform light

---

[15] *See* n.5.

work [o]n a regular and routine basis." (DE 11 at 21; *see also* SSR 96-8p.) As

Plaintiff correctly points out:

> The fact that appellant can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this appellant possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by appellant. *A man is disabled within the meaning of the Act, if he can engage in substantial gainful activity only by enduring great pain.*

*Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) (emphasis added). In

other words, "a disability applicant need not be completely helpless or bedridden to

fall within the purview of the Social Security Act." (DE 11 at 22.) True enough;

but more to the point, the ALJ in this case clearly performed a proper analysis by

considering "[t]reatment, other than medication . . . received for relief of . . . pain

or other symptoms[,]" (20 C.F.R. § 404.1529(c)(3)(v)), daily activities (20 C.F.R.

§ 404.1529(c)(3)(i)) and medication (20 C.F.R. § 404.1529(c)(3)(iv)). In the end,

having considered these factors, the ALJ found that her allegations regarding the

severity of her symptoms were only "partially credible." (R. at 22.) This

credibility finding was well-supported and well-reasoned, and the standard of

review requires that it be given deference. Moreover, and consistent with her

finding of "partial credibility," the ALJ did not entirely dismiss Plaintiff's

complaints, but instead, "partially reflected them" in her Step 2 and 4 findings.

I acknowledge Plaintiff's attempt to mount a challenge to the ALJ's consideration of Subsections 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v), pointing out that "plaintiff has no medical insurance[,]" claiming that "the ALJ improperly assumed that the plaintiff's lack of medical treatment indicated that the allegations were not credible[,]" and noting that:

> . . . the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment *without first considering* any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

SSR 96-7P (S.S.A. July 2, 1996) (emphasis added).  (DE 11 at 22-23; *see also* DE 11 at 19.)  In fact, the ALJ observed, "[w]hile the undersigned sympathizes with the claimant's reported inability to procure funds for the physician visits, the record contains little, if any, evidence of visits to the emergency room or free care clinics."  (R. at 21.)  This is an entirely valid consideration.  *Hashemi v. Comm'r of Soc. Sec.*, No. CIV.A. 11-13629, 2012 WL 3759033, at *14 (E.D. Mich. Aug. 6, 2012), *report and recommendation adopted*, No. 11-CV-13629, 2012 WL 3731754 (E.D. Mich. Aug. 29, 2012).  Later in her opinion, the ALJ reiterated her appreciation of this concern by stating:  "While the undersigned again sympathizes with the claimant's inability to procure adequate insurance, and finds her subjective complaints partially credible, there simply is not enough objective proof in the record to establish a more restrictive [RFC]."  (R. at 22.)  Therefore, the ALJ

33

did first consider Plaintiff's inability to procure funds or adequate insurance before drawing any inferences from the infrequency of Plaintiff's medical visits or failure to seek medical treatment.  SSR 96-7p.  This "consideration" is all that is required, and here it was explicitly given.  Moreover, it is difficult to ignore the fact that Plaintiff did in fact obtain treatment at various points (*see* R. at 212-214 [November 2012 – July 2013]), indicating that she could do so when necessary. *See Van Heck v. Comm'r of Soc. Sec.*, No. 06-15233, 2008 WL 1808320, at *6 (E.D. Mich. Apr. 21, 2008)..

### G.    Conclusion

In sum, I conclude that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 13), and **AFFIRM** the Commissioner of Social Security's decision.[16]

## III.    PROCEDURE ON OBJECTIONS

---

[16] Within her motion, Plaintiff states:  "It is submitted that GRID RULE 201.12 should be applied to direct a conclusion of disabled in this case. The claimant is closely approaching advanced age, is a high school graduate with no past relevant work[,]" and, in conclusion, Plaintiff states, "201.12 directs a conclusion of disabled for an individual with the claimant's age, education and work experience who is limited [to] sedentary work activity."  (DE 11 at 19, 25.)  However, the Court does not interpret this assertion as an independent basis for review, because it is not an argument contained within the statement of issues presented as required by E.D. Mich. LR 7.1(d)(2) ("Form of Required Briefs.").  Furthermore, this argument is otherwise undeveloped and accordingly waived.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 24, 2016          s/Anthony P. Patti
                             Anthony P. Patti
                             UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record on May 24, 2016, electronically and/or by U.S. Mail.

                             s/Michael Williams
                             Case Manager for the
                             Honorable Anthony P. Patti